JULIA C. REITH v. ABRAHAM TOBER, Appellant.—8 S. W. (2d) 607.

Division One, July 7, 1928.

*Bryan, Williams & Cave* for appellant.

*M. N. Sale, Foristel, Mudd, Blair & Habenicht* and *Harry S. Rooks* for respondent.

728

GRAVES, P. J.—Action for personal injuries, so serious in character that the amount of the damages ($15,000) awarded by the jury is not even questioned upon the defendant's appeal herein. Learned counsel in their statement of the case say: "Plaintiff was seriously injured. We are not questioning the verdict as excessive, and so omit any detailed evidence with reference to these injuries." By an additional abstract respondent presents in detail this evidence as to the injuries. This evidence more than sustains the statement of appellant's counsel, that "plaintiff was seriously injured." Appellant does not question the amount of the judgment, and the rather horrifying details of the accident and injuries can serve no useful purpose now. By respondent it is claimed that the evidence as to the location and character of the wounds tends to show negligence and the manner and cause of the injury. This, to explain the reason for this portion of the additional abstract. We shall not go into this somewhat mooted question. This additional abstract brings out more in detail some of the other evidence, as well as some refused instructions requested by the plaintiff. Of these, if necessary, later. Counsel for the appellant thus outlines the petition:

"This is a suit brought by plaintiff to recover for injuries received on November 7, 1924, on Washington Avenue in the city of St. Louis, opposite what is known as Washington Way. Washington Avenue at this particular point is an open public street running east and west, and Washington Way is a public pedestrians' walk running north and south from Olive Street on the south to Washington Avenue on the north. This way stops on the south side of Washington Avenue about opposite 4215 or 4217 Washington Avenue.

"The amended petition, on which the cause was tried, after the usual formal allegations, charges that the plaintiff at the time of the accident was crossing Washington Avenue, on foot, from the south to the north side at or about Washington Way, and that while she was in the traveled part of the street she was struck by an automobile being driven westwardly by the defendant Tober. The amended petition then pleads the speed ordinance of the city of St. Louis, and then, in omnibus fashion, charges that plaintiff's injuries

were directly due to the defendant's several acts of negligence, as follows:

"1.   Negligent speed and violation of said speed ordinance.

"2.   Negligent failure to drive his automobile as near the right-hand curb as practical.

"3.   Negligent failure to warn plaintiff.

"4.   Negligent failure to keep vigilant watch.

"5.   Negligent failure to have his automobile under control so as to be able to check its speed and so avoid striking the plaintiff.

"6.   The last-chance doctrine.

"The answer was a general denial."

After giving their view of the evidence in the case (which we omit here, preferring to make our own statement of the evidence), the statement of counsel then thus proceeds:

"During the trial plaintiff offered in evidence, and the court admitted, over the objection and exception of the defendant to the effect that there was no evidence that speed was the proximate cause of plaintiff's injuries, the speed ordinance of the city of St. Louis. On this state of facts the court gave the jury the following instructions:

"(1)   The usual instruction as to burden of proof.

"(2)   An instruction withdrawing from the jury's consideration the charge of negligence in failing to drive as near the right-hand curb as practicable.

"(3)   An instruction withdrawing the charge of negligence in failing to warn.

"(4)   An instruction bottomed on the last-chance doctrine, as follows:

"'4.   If the jury find and believe from the evidence that the defendant negligently failed to check or slacken the speed of his automobile as he approached Washington Way where it strikes Washington Avenue, *when he knew, or by the exercise of that degree of care required of him by law could have known, or could have seen, that the plaintiff was in or approaching a position of imminent danger, and that plaintiff was oblivious or ignorant of her dangerous position, if you so find;* and if you further find and believe from the evidence that, by the exercise of ordinary care, the defendant would have seen, or should have seen, the plaintiff in a position of imminent danger, and could have avoided striking and injuring the plaintiff, if you find that he did strike and injure her, by slowing down or slackening the speed of his automobile, and that the defendant negligently failed so to do; if you further find that by so slowing down or checking the speed of his automobile the defendant could have stopped his automobile before it struck the plaintiff, or have avoided striking her, then your verdict must be in favor of the plaintiff

and against the defendant, even though you may find and believe from the evidence that plaintiff herself was not exercising ordinary care for her own safety at the time of the occurrence.'

" (5)   The usual instruction defining ordinary care.

" (6)   An instruction on the measure of damages.

" (7)   An instruction with reference to evidence of negligence.

" (8)   The usual credibility instruction.

"The defendant asked, and the court refused, instructions withdrawing the specifications of negligence, as contained in plaintiff's petition, bottomed on (1) speed and (2) failure to have his car under control, as follows:

" '1.   The court instructs the jury that among the charges of negligence contained in plaintiff's petition is the charge that defendant operated his automobile at a dangerous rate of speed, and, in this regard, you are instructed that, under the pleadings, you cannot find for the plaintiff on this ground, and this charge is withdrawn from your consideration.

" '2.   The court instructs the jury that among the charges of negligence contained in plaintiff's petition is the charge that defendant failed to have his automobile under control, and, in this regard, you are instructed that, under the pleadings and the evidence, you cannot find for the plaintiff on this ground, and this charge is withdrawn from your consideration.' "

The record shows these Instructions 1 and 2, as F and H.   For the defendant Instruction 7 was given, and as the case went to the jury, in behalf of the plaintiff, upon the humanitarian doctrine only, and as there is complaint made by appellant of the court's failure to give certain withdrawal instructions, this Instruction 7, given for defendant, becomes important.   It reads:

"The court instructs the jury that you cannot presume negligence on the part of the defendant from the mere fact alone of a collision between defendant's automobile and the plaintiff, even though you find from the evidence that there was such a collision, *and you are further instructed* that before you can find for the plaintiff you must find and believe from the greater weight of the credible evidence that the defendant was guilty of negligence *in one or more of the particulars set out in the other instructions herewith given you,* and that *such negligence of defendant,* if any you find, was the cause of the collision and of the plaintiff's injuries, if any."   (The italics are ours.)

The only instruction in which was "set out" any submitted negligence was this Instruction 4, quoted supra, upon the last chance or humanitarian doctrine.   It appears from the additional abstract that plaintiff did ask other instructions upon primary negligence, including rate of speed, but these were refused.   As plaintiff has not appealed, these matters are unimportant, save as to the mere history

of the case. It suffices to say that the final submission of the case (whether voluntary or by the court's action on instructions) was upon the humanitarian doctrine of negligence *only*.

We have carefully read two splendid briefs in this case on behalf of the appellant, i. e. (1) the principal brief for appellant, and (2) a reply brief. In neither is it claimed that the plaintiff did not make out a case for the jury on the facts, under the humanitarian rule of negligence. No claim is made that a demurrer to the evidence should have been sustained, and therefore the case be simply reversed. The failure of the court to take the case from the jury is not urged as error anywhere in these briefs. The reply brief thus concludes:

"We again respectfully submit that in view of the alleged errors set forth in our brief in chief and herein the cause should be reversed *and remanded for new trial.*"

Assignments of Error and Points and Authorities are stated together. In other words, there is no separate assignment of errors. But it suffices to say that in the "Assignment of Error and Points and Authorities" it is no where urged that the court erred in refusing to give defendant's demurrer to the evidence, although an instruction in the nature of a demurrer to the evidence was asked and refused. Under these circumstances we could well say that there is a conceded case for the jury under the humanitarian rule, and omit a detail of facts. But we shall make a very short statement of the facts, although the assignments of error go only to the form of the principal instruction given for plaintiff and the refusal to give certain withdrawal instructions for the defendant.

The pertinent facts as to the surroundings, and to be considered on the question as to whether or not plaintiff made a case for the jury, are as follows: Washington Way is a narrow way (fifteen to twenty feet wide, under the evidence), much used by pedestrians coming from the south to Washington Avenue, which is a street forty feet wide running east and west. Washington Way does not cross Washington Avenue, but terminates at the south side of Washington Avenue, but is used by many pedestrians who desire to cross Washington Avenue and go to the north side thereof. It is admitted by appellant that Washington Avenue, at this point, was much used as a crossing by pedestrians desiring to cross from Washington Way on the south side of Washington Avenue to the north side of Washington Avenue. On the evening of the accident (which was at about seven o'clock), the plaintiff came from the south on Washington Way to Washington Avenue for the purpose of visiting a niece who lived on the north side of Washington Avenue about opposite to Washington Way. Plaintiff says she recollects starting across Washington Avenue to go to the north side thereof to her niece's home, but could not recollect anything that happened there-

after. The character of her injuries would perhaps tend to explain this latter fact.

There is evidence from two witnesses, at least, that defendant said, or admitted, that he struck the plaintiff. One of these two testified that the defendant said that "the woman [meaning plaintiff] was crossing the street, passed behind another machine, and she was a short distance away, about fifteen or twenty feet, and he could not stop his machine quick enough to avoid hitting her." This witness was the man who signed the defendant's bond on the night of the accident. Defendant had been arrested for the accident and brought to the police station. The other witness thus quotes the defendant: "I hit her. She ran right in front of my car and I could not help it." Defendant's deposition had been taken, and this the plaintiff put in evidence. He also testified on the stand. From the two sources we gain the following facts from him: That defendant was driving an Oakland coupe, and with him was a Mr. Martin: that they were going west on Washington Avenue about six feet from the north curb of the street: that he *did not* strike anyone: that he was looking *straight ahead* and that there was nothing to obstruct his view, and that he saw no pedestrians in the street; that he heard a knock like something had hit the rear panel of his car; that he thought some one had thrown something at the rear panel; that Martin said: "Did you hear that?" That he then looked back through the back glass and saw an object in the street; that he stopped his car within *twelve feet* and backed up and saw that it was a woman; that he could have stopped his car *within five feet* had he wanted to; that the woman was seven or eight feet from the north curb.

In the abstract of his evidence, by appellant, the records shows another portion of defendant's evidence as follows:

"That as they were driving west he was talking occasionally to Martin; that in the 4200 block he heard Martin say, 'This is quite a long block;' that he *was looking straight ahead; that he never turned to one side to talk to Martin;* that he would not say that he did not turn his head at all from the time he left this place of business, *but he was looking straight ahead in the* 4200 *block;* that he could not recollect Martin saying anything to him in the 4100 block; that up to the time of this accident he did not known Washington Way was there: that he did not sound any horn or give any warning as he approached Washington Way."

As a fact Washington Way was about the middle of the 4200 block. Martin corroborated the defendant in most of his testimony, except as to the amount of talking they were doing. Defendant was a wholesale shoe man, and Martin was a purchaser for a chain of stores in Iowa and was going out for dinner with defendant. On the situation the record shows this as a part of Martin's evidence:

"That at the time of the accident he was riding with Mr. Tober west on Washington Avenue, *and as they approached Washington Way there were* cars ahead of them and cars behind them; that it was close to seven o'clock and rather dark; that the headlights were on; that they did not pass any other machines going west, and were traveling at a moderate rate of speed; that they were driving within about *six feet* of the righthand curb; that the next machine in front of them going west was *about twenty or twenty-five feet away;* that they were driving along *talking in the usual way* and he remarked, 'My, what a long block this is.' *That he was looking directly ahead,* sitting in the front *seat on the right-hand side;* that he saw no pe-- destrians, and that the first thing that attracted his attention was a sound like somebody had hit the car with a brick or stone; that this sound came from the rear and he called Mr. Tober's attention; that Tober glanced around and immediately put on his brakes, and they had gone ten or twelve feet when they backed up and Tober said, 'There is something in the street,' and they got out and saw a form lying in the street; that other people immediately gathered around."

From this appears the theory of the defense, but we set it out because of the admissions of the defendant therein. He emphasizes the fact that he was looking *straight ahead* and *did not* look laterally, or to the sides, as he drove west through this long block. He said he could have stopped *in five feet* if he had wanted to stop. Contra, the plaintiff's evidence from several witnesses showed that they heard an impact as if two machines had collided; that upon looking they saw the woman down in the street; that the machine of the defendant had been brought to a stop near a lamp post sixty to seventy-five feet west of where the plaintiff was lying in the street. Note that Martin saw Washington Way, and further note that counsel for appellant admitted "that the scene of the accident was in the residential portion of the city and the rate of speed provided by the ordinance was ten miles."

The supplemental abstract of record, by respondent, shows the following as occurring when a witness, Hunt Atkinson, was being examined:

"On November 7, 1923, I lived at 4213 Washington Avenue. It is almost right opposite Washington Way.

"Q. Do people use Washington Avenue at that point as a crossroad?

"THE COURT: Judging from Judge CAVE's statement, who acquiesced in what the other witness said, it was used as a crossroad.

"Judge CAVE: Oh, yes; there is no dispute about that."

An automobile expert, used by plaintiff, said that a car such as defendant was using could be stopped at the point of accident (which was slightly up-grade as you went west) *within five feet* if the car

was going ten miles per hour: *within ten feet* if going fifteen miles per hour, and *within fifteen feet* if going twenty miles per hour. Such are the most material facts on the question of defendant's negligence. On the question of the plaintiff's right to go to the jury, we are concerned mostly with the evidence for plaintiff's witnesses and defendant's admissions. With these we close our outline of the case.

I. We regret that we have been tediously verbose in our statement of this case, but the very few matters pressed as errors required setting out some instructions in full, so that the full force of the same might be seen. Much was required to be quoted from appellant's statement of the case for the same reason. Plaintiff's instruction on the humanitarian doctrine (especially the first part thereof down to the first semicolon), is assailed. The part so assailed is set out in bold black type, which portion we have underlined in our statement, supra. The complaint as to this instruction is thus stated:

"The instruction above quoted, given on behalf of the plaintiff, submitting her case to the jury on the humanitarian doctrine, is erroneous, in that it assumes as a fact, and so tells the jury at the outset, that the defendant either knew, or by the exercise of proper care would have known, that the plaintiff was in or approaching a position of imminent danger, of which plaintiff was oblivious. This instruction says:

" 'If the jury find . . . that the defendant negligently failed to check or slacken the speed of his automobile as he approached Washington Way, . . . when he knew, or by the exercise of that degree of care required of him by law could have known, or could have seen, that the plaintiff was in a position of imminent danger . . .'

"The instruction, as thus written, does not require the jury to find that defendant knew, or could have known, these facts, but tells the jury that as the defendant approached Washington Way he knew. So, assuming this most material fact, the instruction, we submit, is erroneous."

This is not a fair criticism of this instruction. The wording may be a little awkward, but it does not assume any fact. The words elided in the above excerpt made by the appellant makes the instruction appear misleading. Let us cut out some words to shorten this clause, but put back a material portion left out in the above. We submit the following:

"If the jury find *and believe from the evidence* that the defendant negligently failed to check or slacken *the speed of his automobile*

. . . *when he knew, or by the exercise of that degree of care required of him by law could have known* or could have seen that the plaintiff was in or approaching a position of imminent danger, and that plaintiff was oblivious or ignorant of her dangerous position, if you so find.''

In our judgment this clause of the instruction contains no assumption of fact, but requires the jury ''to find and believe'' the same ''from the evidence.''

''If the jury *find and believe from the evidence*'' what? (1) ''that the defendant negligently failed to check or slacken the speed of his automobile,'' (2) ''when he knew, or by the exercise of that degree of care required of him by law could have known or could have seen that the plaintiff was in or approaching a position of danger,'' and (3) ''that plaintiff was oblivious or ignorant of her dangerous position.'' All three of these things were to be found and believed by the jury ''from the evidence.'' ''*When he knew* . . . that the plaintiff was 'in or approaching a position of imminent danger'' was just as much to be found from the evidence, as ''that the defendant negligently failed to check or slacken the speed of his automobile.'' This portion of the instruction does not assume any thing as a fact.

Looking at the instruction from another viewpoint we get the same idea. This clause of the instruction begins with the words, ''If the jury find and believe from the evidence'' and ends with the words ''if you so find.'' This clearly means that all the things between these two phrases must be *found, by the jury from the evidence.*'' There is no assumption of any fact. The latter portion of the instruction emphasizes this view of the matter by again telling the jury the material things which they must find. A careful reading of this instruction shows that it assumes no material fact, but requires the finding of all facts, ''from the evidence.'' It makes no harmful assumption of facts. [Van Leer v. Wells, 263 S. W. l. c. 494 and 495; Adams v. St. Louis-San Francisco Ry. Co., 272 S. W. l. c. 985; Mabe v. Gille Mfg. Co., 271 S. W. l. c. 1028.]

In the latter case supra, a discussion of the phrase, ''if you so find,'' in an instruction, is quite fully presented by the Kansas City Court of Appeals.

But aside from all this, the first clause of this instruction, when carefully read, shows upon its face that no assumption of fact is made therein, as we have tried to demonstrate, supra. When we go to the second clause of the instruction it is made clear that every necessary fact for a recovery must be found from the evidence. In other words, this last clause of the instruction is utterly inconsistent with the contention made as to this instruction assuming any fact. The instruction, although awkwardly worded, is well enough.

II. There are but two other assignments of error, and both of them relate to the court's action in refusing to give the two withdrawal instructions set out in full in our statement, supra. There are two full and complete answers to this contention, which answers apply to both of these refused instructions.

(a) By Instruction 7 given for the defendant, among other things, it is said: "and you are further instructed that *before you can find for the plaintiff* you *must find* . . . that the defendant was guilty of negligence in one or more of the particulars *set out in the other instruction herewith given you.*" The defendant thus had the court limit and restrict what could be considered by the jury. The jury was to consider *only* the alleged negligent acts "*set out in the other instructions herewith given you.*" This clearly withdrew from the jury's consideration every thing in the form of alleged negligence except such as was mentioned in the instructions given to the jury. There was but one such instruction given, and that was plaintiff's instruction on the humanitarian rule. The negligence covered by that rule was the only alleged negligence, "set out in the other instructions herewith given you," and the effect of Instruction 7, asked by defendant, and given by the court, was to prohibit the jury from considering any alleged negligence except the negligence covered by the humanitarian rule. The court having thus limited the alleged negligence to be considered by the jury, committed no error in refusing these two withdrawal instructions. Instruction 7 effectively withdrew the alleged negligence mentioned in these two refused instructions from the consideration of the jury.

(b) However, we have ruled that the refusal of withdrawal instructions, such as these, is not error. That the refusal, under the circumstances of the case at bar could work no harm. [Dietzman v. Screw Company, 300 Mo. l. c. 215.] We there said:

"In the above we have covered all the points made and briefed by appellant in the brief, except points five and six, and these we take together.

"Point five alleges error upon the part of the court in refusing to give Instructions 5, 6 and 9. These instructions were instructions withdrawing from the jury certain assignments of negligence made in the petition, and especially that assignment relating to screening and hand-railing. It suffices to say that plaintiff abandoned all these assignments of negligence when she came to submit her case to the jury. As said the case was submitted upon a single issue which we have discussed. The refusal of these instructions could work no harm in this situation."

In that case the submission was on the humanitarian rule *alone*, although other negligence had been charged, just as in the instant

case. It is urged that this ruling conflicts with Crone v. United Railways, 236 S. W. 654, 657. We wrote both cases, and there is no conflict. In Crone's case, a certain act had been set out in the petition as negligence, but the petition failed to aver that this alleged negligent act of defendant caused his injury. In other words, the petition omitted to aver this particular act of negligence to be causal negligence, by failure to aver that it caused or contributed to his injury. We there held that an instruction for plaintiff which submitted this negligence to the jury, when the petition had not charged such negligence to be the cause of his injury, was error. The matter is made clear in Crone's case, 236 S. W. 1. c. 656, Paragraph III. The question in Crone's case is far from the question in the Dietzman case. Their doctrines are not even closely related. The Dietzman case, supra, rules this case. When the plaintiff's case is submitted solely on the humanitarian rule, other pleaded negligence drops out of the case, and is as fully out of the case, by the plaintiff's abandonment of such other negligence, as if specifically withdrawn by instruction. The trouble about the usual withdrawal instructions is, that they usually confuse and mislead a jury, and a jury is liable to conclude that evidence which is proper for their consideration under the humanitarian rule, has been withdrawn. We tried to make the matter clear in Schulz v. Smercina, 318 Mo. 486, 1 S. W. (2d) 1. c. 119; whereat we said:

"But why such an instruction in this case? The fifth charge of the petition had been abandoned by plaintiff, and was as fully out of the case, upon submission by plaintiff, as it was after the giving of this instruction for defendant."

The rule stated and quoted, supra, from the Dietzman case, supra, is sound law. Under it the refusal of these withdrawal instructions was proper. To say the very least that could be said, such refusal would be harmless, because the very submission of the case by the plaintiff upon the humanitarian rule *alone*, takes the other alleged negligent issues out of the case as fully as if taken out by proper and cautiously drawn withdrawal instructions.

III. We are not saying that the trial court should have given some kind of a proper instruction upon alleged negligent speed, because the plaintiff, after the court's ruling on this act of alleged primary negligence, pushed the matter no further, but made the submission of her case upon the humanitarian doctrine of negligence alone. We do say, however, that if the three or four witnesses are telling the truth (and we have no reason to doubt them), when they say that defendant's car ran to a telephone pole sixty to seventy-five feet west of where plaintiff was lying stricken upon the ground, running such distance might be material upon the question, as showing

not only that the rate of speed was much in excess of twenty miles per hour (as admitted by defendant); and that such rate of speed was the proximate cause of the injury. But this is immaterial in the present situation. That the evidence, and the facts, and circumstances in evidence, clearly entitled the plaintiff to have her case submitted to the jury on the humanitarian rule, there can be no question. When she started to cross Washington Avenue she had forty feet to go. The witnesses place her in the street at a point seven to eight to ten to twelve feet from the north curb of Washington Avenue, when she was knocked down. The defendant says seven to eight feet from the north curb. From the time she left the south curb of Washington Avenue at Washington Place, she had traveled thirty feet before she was struck. With defendant approaching from the east at twenty miles per hour, or even at fifteen miles per hour, he could have seen this woman crossing the street when he was quite a distance to the east of Washington Way. We mean, had he looked laterally, to each side, as he traveled west. He was in duty bound to look to each side, for pedestrians that might be on the street and crossing the same, as well as to look *straight ahead*. He says that he did not look to the sides of the street as he went through the 4200 block, but only looked *straight ahead*. As Ragland, J., said in Hornbuckle v. McCarty, 295 Mo. 1. c. 173, "but the driver must look not only straight ahead but *laterally ahead*." This man says that he did not do that in passing through this long 4200 block. Had he done so he might have discovered this approaching woman, and avoided this lawsuit. He confessed his negligence on the trial as we read his statements as to his failure to look *laterally ahead*. He emphasized the fact that he only looked straight ahead. When all the facts of record are considered it is apparent that the plaintiff clearly made a case for the jury upon the humanitarian rule, and his admission of the fact that he did not *look laterally ahead* no doubt accounts for the fact that learned counsel have not pressed their demurrer to the evidence here.

The judgment *nisi* is for the right party and should be affirmed. It is so ordered.

The foregoing opinion of *Graves, P. J.*, being unsigned at the time of his death is now adopted as the opinion of the court. All concur, except *Gentry, J.*, not sitting.