NORMAN GARDENHIRE, RESPONDENT, v. ST. LOUIS-SAN FRANCISCO RAILROAD COMPANY, APPELLANT.—31 S. W. (2d) 113.

Springfield Court of Appeals. August 25, 1930.

*E. T. Miller, Mann & Mann* and *J. W. Miller* for appellant.

588

*Barrett & Kemp* and *Herman Pufahl* for respondent.

SMITH, J.—This is a railroad crossing case. The plaintiff was injured by a train striking the automobile in which he was riding, the automobile being driven by the plaintiff's brother. There are several grounds of negligence in the petition, but both plaintiff and defendant agree that the only question in the case is the allegation, the proof and the submission of liability under the humanitarian rule, and the defendant contends that is not sufficiently pleaded and that, if it should be held that the pleadings are sufficient, the evidence is insufficient and the instructions improper to sustain the verdict under the humanitarian rule.

That part of the petition bringing the case within the humanitarian rule, is as follows:

"And for another and further assignment of negligence, the defendant by its servants and agents, at said time and place, was running its locomotive and train at a negligent and careless rate of speed and failed to keep and maintain a vigilant lookout, in violation of its duty to run said train at such a speed as would permit its engineer to have its train constantly under control; and negligently and carelessly failed to sound the whistle or give a warning, and negligently and carelessly failed to stop said train and slacken the speed thereof and thus avoid running into said automobile and injuring plaintiff, although they saw, or by the exercise of ordinary

care might or could have seen, said automobile in which plaintiff was riding, upon or approaching the tracks, and that defendant, by its agents and servants, should have sounded its whistle and stopped or slackened the speed of said train in time, by the exercise of ordinary care, to have averted the collision with said automobile and injury to plaintiff, but carelessly and negligently failed so to do, which negligence directly contributed to cause the collision and damages aforesaid.

"Plaintiff further states that by reason of all the acts of negligence, acting separately or together, contributing thereto, plaintiff has been damaged as aforesaid in the sum of thirty thousand dollars ($30,000)."

The defendant filed an answer denying generally the allegations of the petition, and denying the specific allegations of negligence in the petition, and alleged a violation of certain ordinances of the city by failing to stop before proceeding to cross the railroad, and alleged contributory negligence on the part of plaintiff.

Plaintiff obtained verdict and judgment for $5000 and proper steps were taken by defendant for appeal. The defendant makes no complaint as to the proof of plaintiff's injury, and does not contend that the judgment is excessive.

There are several assignments of error but as we understand it from both parties the only controversy here is as to whether the petition stated a case under the humanitarian doctrine, and whether the evidence was sufficient to submit that question to the jury, and whether or not the jury was properly instructed on that particular question.

We think the paragraph of the petition which we have heretofore quoted is sufficient to submit the allegation of liability under the humanitarian rule.

We think the court did not err in refusing to instruct the jury to find for defendant at the close of plaintiff's evidence for evidence had been submitted that the operators of the train could have seen the automobile approaching the track or on the track when the train was approximately four hundred feet away. The evidence showed that for at least thirty feet from the track on the street there was no obstruction that would have kept the engineer from seeing the approaching automobile, after the train was within four hundred feet of the crossing. The evidence also shows that the automobile in covering the last thirty feet before reaching the track was traveling from six to ten miles per hour and at that rate it required some time for the automobile to reach the track after coming in view of the engineer on the approaching train. The testimony shows that the automobile stopped after it reached the track; how long it was stopped is uncertain, but long enough for the driver to tell the

plaintiff to jump out and for the plaintiff to tell the driver to back off the track. One witness testified the automobile was stopped thirty seconds but changed the statement and said it was not that much. The plaintiff's testimony showed that several seconds must have passed from the time the automobile came within the thirty foot space and the time the train struck it. The testimony of an experienced engineer who had driven over that particular track for many years was that a train going at the rate this one was at that particular place could have been stopped in about two hundred and fifty feet, so we think the slacking of speed and giving of warnings were questions of fact properly for the jury. And the court did not err in submitting the issue to the jury at the close of all the evidence. The evidence of the engineer made it an issue. He testified that the engine was in good working condition, that he was running late that morning, that he knew of this crossing and its use by the public, that it was his duty to watch this crossing as he approached, and to give proper warnings; that he could see this crossing approximately four hundred feet away, that there was no obstructions to keep him from seeing an automobile thirty feet from the track, and that he did not see the automobile approaching. That the first time he saw the automobile was when he was two hundred feet from it, and at that time the automobile was stopped and remained stopped until it was struck. Conceding, as he says, that he could not stop after he saw him two hundred feet back, it was a question for the jury to determine, as to whether he could have seen him when he was far enough back to have warned him or slackened his speed. He says the automobile was stopped when he first saw it. The evidence shows that the automobile could have been seen for at least thirty feet before it reached the track. The automobile was standing on the track when the engineer saw it, or it was approaching the crossing within the thirty foot space open to the engineer's view. The engineer said when he first saw it he was two hundred feet from it, and the driver of the automobile said he was traveling at seven miles per hour, the train was traveling about three and one-half times that fast, and while the automobile was traveling thirty feet to get on the track after coming in view, the train was traveling at least one hundred and five feet. So it follows that the engineer either saw, or could have seen if he had been looking, the automobile more than three hundred feet from the accident, and he testified that he stopped the train in about three hundred twelve feet, and the other engineer testified that it could have been stopped within about two hundred fifty feet. Since the engineer saw the automobile stopped on the track when there was a space of two hundred feet more in which the engineer could have seen the crossing, and did not see the automobile on the crossing nor approaching it, and since

there was contradictory evidence as to the warnings, we think it was a question for the jury, and the court properly submitted the question to the jury. Of course there was sharp conflicting evidence as to the sounding of the alarm and the distance the train was away, but these questions are for the jury in cases of this kind. [Herrell v. St. Louis-San Francisco Railway Company, 18 S. W. (2d) 481; Rummels v. Illinois Central Railway Company et al., 15 S. W. (2d) 363.]

The Court of Appeals in considering testimony upon demurrer to evidence must regard testimony for plaintiff as true as long as it is not impossible as opposed to the physics of the case or beyond reason. [Crowley v. St. Louis-San Francisco Railway Company, 18 S. W. (2d) 541, 543, and cases cited.]

The defendant complains that the court erred in refusing to give several requested instructions withdrawing from the jury certain assignments of negligence made in the petition. It is sufficient to say that plaintiff abandoned all these allegations of negligence when he submitted his case to the jury solely on the humanitarian doctrine, and it worked no harm to refuse the withdrawal instructions. [Rieth v. Tober, 8 S. W. (2d) 607, 611; Dietzman v. Screw Company, 300 Mo. 1. c. 215, 254 S. W. 59.]

The defendant complains that the court erred in refusing to give several requested instructions lettered J. K. L. M. We have carefully considered these instructions, which deal with contributory negligence, burden of proof, and the question of giving the alarm by the sounding of the whistle. We think the questions of burden of proof and the giving of the alarm were properly submitted to the jury in other instructions given at the request of the defendant, and the court did not err in not submitting the questions again in different language. Instruction J was as follows: "The court instructs the jury that the plaintiff was guilty of contributory negligence in failing to discover the approaching train and warn the driver thereof."

No error was committed in refusing this instruction. It was proper to refuse such an instruction in a humanitarian rule case where the plaintiff had abandoned all the other assignments of error. [Phillips v. East St. Louis & S. Railway Company, 226 S. W. (Mo.) 863, 868.]

The defendant seriously complains that plaintiff's instruction No. 1 as modified and given was error. We do not copy the instruction in full, but the paragraph complained of is as follows:

"And if the jury further find and believe from the evidence that as said automobile, in which plaintiff was riding at the time of his injuries, approached near and went upon the said railroad track over which said train was operated, the agents and servants of the defendant, in charge of said passenger train, negligently failed to

sound a warning of the approach of said train, if they saw, or by the exercise of ordinary care after they saw, if they did see, or in the exercise of ordinary care could have seen, the said automobile, with plaintiff therein, in a position of imminent peril and danger of being struck by said train, and that the driver of and those in said automobile, and particularly the plaintiff, were unaware of the approach of said passenger train at said crossing, in time, by the exercise of ordinary care, to have given a warning to the persons in said automobile of the approach of said passenger train by sounding the whistle or ringing the bell (if you further find that the driver of said automobile, by the use of due care, could have heard such warning and acted thereon in time to have stopped said automobile, and thereby have prevented said collision) and permit said automobile and this plaintiff to escape from said peril, if any; then your verdict will be in favor of plaintiff and against the defendant, St. Louis-San Francisco Railway Company;

"And this is so, notwithstanding you may also find that the driver of said automobile was also guilty of negligence in driving said automobile onto said track into the path of said approaching train, and that the plaintiff was also negligent in failing to discover the approach of said train."

The defendant insists that under this modified instruction the question of stopping the train before it reached the crossing is not submitted to the jury and is out of the case, and that this instruction only submits the question of failing to properly warn the plaintiff of the approaching train in time to have stopped said automobile and permit the plaintiff to escape from peril, and the defendant insists there was no evidence of failure to give such warnings. We think there was evidence to make it a question for the jury as to the lack of warnings. The plaintiff testified that as he approached the crossing he did not hear any warning until he was at the rails, when the engine must have been around thirty feet from him, and when he heard it he told the driver to back up, and the whistle was just before the crash.

W. M. Wickersham was driving behind the plaintiff and described the houses, billboards, and telegraph poles on the south of Commercial street which obstructed the view of the approaching train. He was familiar with the crossing and knew the time for the train to pass and was looking for and expecting the train and heard the sound of the engine running but did not hear or notice any bell ringing or whistle sounding, heard the chug-chug of the engine coming up the hill. The engine was laboring considerably and he heard that three hundred eighty to four hundred eighty feet, even down below the other street crossing.

Wayne Gardenhire testified that he was driving the automobile and slowed down to six or seven miles per hour before reaching the track and that he had looked for the approaching train and did not see it, until it was right close to him and he did not hear it until then and the automobile had stopped and the plaintiff told him to "back up" and he told the plaintiff to "jump out." He said the train was close to him before it whistled and that he was listening for a train and didn't hear either the whistle or the bell, and that he could have heard either down to the signal blocks which were about five hundred feet away.

D. L. Cox an engineer on another train saw the red signal on the electric block indicating that this train was coming and as he looked to see what train was coming he saw the automobile going west on Commercial street, and said if the automobile had gone on there would have been no trouble. He used this language: "I would judge he had time to cross, cleared the track if he had kept on going, and it looked to me like he stood there long enough to have backed up before the train hit the crossing, but he was standing still at the crossing. Well I didn't see the actual collision, for I was moving and I went behind a little two-room house that stands there, but I could see the fog or dust from it and see the crossing sign there at the crossing it was on. That was as near as I could see the actual accident.

"Q. Did you hear No. 2, any signals from No. 2? A. No, sir; I couldn't have heard a signal, a bell or anything from the noise of my own engine; it was popping off and making quite a noise. . . .

"Q. And where, at the time the automobile was standing close to the rail or was close to the rail, was the passenger train? A. Well, I said the passenger train was around about 150 feet, or something like that from the crossing.

"Q. I understood you to say a minute ago that the last time you saw the car it was approaching the track? A. I told you it was stopped there, the last time I seen it.

"Q. Where was the car, how much of it was on the track? A. Well, the front end was right close to the rail; I couldn't tell whether it was over on the inside or not, but I don't think it was; I think it was right up to the rail.

"Q. You don't think it remained there until it was struck by that engine? A. It wasn't very long.

"Q. Instantly? A. No, not instantly; I think I could have backed my car off if it had been me, if I would not have been too scared to.

"Q. Could you see who was in the car? A. No, I couldn't tell the distance, and a closed car of that kind, you couldn't see who was in it or how many was in it. I was about six or seven hundred feet from it; something like that.

"Q. Would you say positively Mr. Cox, or is it just your opinion as you look at it, that this car ever did stop? A. I can say positively that the car did stop.

"Q. And was it over an instant, more than that (snapping fingers)? A. Yes, sir; it was.

"Q. How long? Indicate by snapping your fingers. A. Well, I don't know, by snapping my fingers, just how long it was; I would judge about thirty seconds; maybe not that long.

"Q. You tell the jury, then that this automobile was there on the track for at least thirty seconds? A. Well it wasn't thirty seconds, no, hardly; it couldn't have been that long.

"Q. How long? Well, I can't say just how many seconds it stood there.

"Q. Well, you were watching it? A. I was watching it, but I wasn't counting the seconds; I was watching the train and it and I didn't look at my watch to see how many seconds it was."

It appears to us that the testimony was sufficient to submit the question of warning to the jury, for if warnings were given or heard as the automobile approached the track, or after the automobile had stopped, was it not a question of fact for a jury to say whether the plaintiff could have escaped the place of peril? We think it was and think it was not error to give instruction number 1. [Rummels v. Illinois Central Railway Company, 15 S. W. (2d) 363.]

Of course the evidence of the defendant was to the effect that warnings were given, but there was sufficient evidence that warnings were not given to make it a question for the jury and therefore it is not for this court to interfere. We find no reversible errors. The judgment is affirmed. *Cox, P. J.,* and *Bailey, J.,* concur.