Joe Willhauck, Appellant, v. Chicago, Rock Island & Pacific Railway Company, a Corporation, and William Moore.—61 S. W. (2d) 336.

Division One, June 12, 1933.

*Everett Hullverson* and *Staunton E. Boudreau* for appellant.

*Jones, Hocker, Sullivan & Gladney, William O. Reeder* and *Ralph T. Finley* for respondents; *Luther Burns* of counsel.

ATWOOD, J.—Plaintiff has appealed from a verdict and judgment for defendants. The errors assigned relate only to the refusal of one instruction requested by plaintiff and the giving of two instructions requested by defendants.

The action was for damages laid at $35,000 on account of personal injuries alleged to have been sustained by plaintiff when one of defendant railway's locomotives, then being operated by defendant Moore as engineer, collided with plaintiff's automobile while the same was being driven by him over a public crossing. The petition contained several specifications of negligence but plaintiff sought instructions only on defendants' alleged failure to give statutory warning and their alleged negligence under the humanitarian rule. Defendants' answer consisted of a general denial and plea of contributory negligence. Counsel for respondents not only say that there was no reversible error in said refusal and giving of instructions but they also insist that the peremptory instructions requested by defendants at the close of all the evidence should have been given. We shall rule the latter contention first.

The collision occurred about three-thirty or four o'clock in an afternoon in the month of May at an intersection of defendant railway's east and west main track with a north and south dirt highway known as Dorset Road in St. Louis County, Missouri. It had rained that day and the night before and the road and crossing were very muddy and slick. Plaintiff was driving an old Model-T one ton Ford truck which had been exposed to the rain until the coils had become wet and for several hours the engine had been missing and performing badly, and plaintiff said "when I would shove in on my clutch too much I would kill the motor." Plaintiff testified that he drove from a side road into Dorset Road about sixty or seventy-five feet south of this railroad crossing and approached the crossing at about three miles an hour "just barely moving." stopped about five feet south of the crossing, looked each way and not seeing or hearing any approaching train he then pushed his foot in on his clutch and worked his gas "just trying to crawl along, just hitting and missing." His own recital of what then transpired is as follows:

"I reached to choke it and I got my wheels up about midway over the tracks and had hold of the choke, like this (indicating, reaching

over), and I was looking at my choke and pushed in on my clutch and reached down—it seems a piece of wire that runs down to the dashboard was hanging—and reached to get that and heard a whistle and looked to my left, then to my right and saw this approaching train. I would judge it was about 150 feet, maybe 200 feet, from me. Before that I had not heard any whistle or bell or anything else. I did not hear any bell then; never heard any bell; heard nothing but that whistle. In that situation I shoved in on my clutch, shoved it clear in and jerked my foot off and repulled down on the gas and the car looked like it rolled right on over so that all but the hind end of it was entirely clear from danger from collision with the train. From the time I heard the whistle I had traveled probably five or six feet. It was just the back end of the body of my truck which was struck. I did not hear the sound of any brakes or anything of that sort. From the time I first saw that train until it hit me I heard nothing but the whistle."

The evidence was conflicting as to whether defendants caused the bell to be rung or the whistle blown before the blast above mentioned. This train consisted of a locomotive and forty-eight heavily loaded freight cars traveling westward at a speed variously estimated at twenty-five to thirty-five miles an hour. The railway track was spanned by an overhead bridge 630 feet east of Dorset crossing. East of this the track curved so that the engineer's view of Dorset crossing was obstructed until the engine passed under the overhead bridge. According to photographs offered in evidence by defendants, which plaintiff's counsel said were "all right," plaintiff while as much as fifty feet south of the crossing could have seen an approaching train even while it was east of the overhead bridge. The head brakeman was seated on the left side of the cab and testified that he first saw plaintiff approaching Dorset road from a side road on the south as the engine passed under this bridge; that he watched the truck as it came very slowly down the road—so slowly that he thought it had stopped twenty-five or thirty feet south of the crossing; that defendants' engine was about 150 feet east of the crossing when plaintiff passed out of his view through the front window of the cab and he then quickly changed his position and leaning out of the side window saw plaintiff's automobile go on the track; that he immediately shouted to the engineer who said he promptly applied the air in emergency and stopped the train in about 880 feet, but it was then impossible for him to slacken the speed until he hit the automobile.

Considering the evidence and all inferences fairly deducible therefrom in the light most favorable to plaintiff, as we must when ruling defendants' requested peremptory instructions, it seems clear that plaintiff was guilty of contributory negligence barring all right of

recovery unless a case for the jury was made under the humanitarian doctrine.

 This assignment of negligence was based upon defendants' alleged failure to sound a warning, slacken speed or stop the train in time to have avoided striking plaintiff's automobile under the circumstances pleaded. However negligent plaintiff may have been in going upon the track in the manner above stated and becoming so absorbed in the operation of his recalcitrant vehicle as to keep no further lookout for an approaching train, such contributory negligence was no defense if, as plaintiff alleged, "defendants in charge of and operating said locomotive and train, saw or by the exercise of ordinary care could have seen, plaintiff's automobile with plaintiff therein, in imminent peril of being struck and injured by said locomotive and train, in time thereafter for the defendants, by the exercise of ordinary care, with the means and appliances at hand and with reasonable safety to persons upon said locomotive and train, to have sounded a warning of its approach, slackened the speed thereof or stopped the same and then and thereby have avoided striking plaintiff's automobile and injuring plaintiff, but negligently failed to do so." If, as plaintiff says, when five feet south of the track upon which no approaching train was within sight or hearing he started to cross "just trying to crawl along, hitting and missing," and was struck by the train before he could extricate himself after discovering his position of peril, then by the exercise of ordinary care defendants while 600 feet away could have seen him driving onto the railroad track, leaning over and looking at and holding the choke, obliviously intent upon coaxing some movement out of his truck while in a position of imminent peril, and several seconds earlier could have sounded the warning that plaintiff says first advised him of the approaching train. If, as plaintiff declared, he moved his truck five or six feet after this warning was given when the train was only 150 or 250 feet away and got his truck entirely in the clear except the rear end, then it is obvious that the collision would have been avoided if he had been given the same warning when the train was even slightly farther away. In Banks v. Morris & Company, 302 Mo. 254, 268, 257 S. W. 482, we held that obliviousness is but an evidentiary fact and need not be pleaded. If plaintiff's testimony was to be believed, from the time he started to cross the track after looking both ways and seeing no approaching train and leaving his position about five feet south of the track his engine trouble and the difficult driving so absorbed his attention that he was oblivious of defendants' approaching train until the whistle was sounded too late for him to avoid the collision. His obliviousness made his position one of imminent peril from the time he started to cross five feet south of the track, and according to plaintiff's evidence this situation

was observable by defendants from the time their engine passed under the overhead bridge more than 600 feet east of the crossing. It is true that defendants' evidence presented an entirely different state of facts but such cannot be considered in ruling defendants' peremptory instructions, and we think these instructions were properly denied.

Plaintiff's requested Instruction P-3, refusal of which is here complained of, quoted from Section 4756, Revised Statutes 1929, requiring a bell to be rung or a whistle to be blown on locomotive engines at crossings, and continued as follows:

"The Court therefore instructs you that if you find and believe from the evidence that the said signals were not given, as aforesaid, then it is presumed that the failure to give them was the cause of injury to plaintiff and the burden of proof is upon defendant to show the contrary."

This instruction should not have been given because, as above shown, plaintiff was guilty of contributory negligence as a matter of law and, therefore, barred from any recovery on this ground of negligence.

Appellant next complains of the following Instruction D-2 given at the request of defendants:

"The Court instructs the jury that if you find and believe from the evidence in this case that brakeman Duncan was in the cab of the engine as the train approached the crossing mentioned in the evidence, and that brakeman Duncan saw the plaintiff slowly approaching the crossing, and if you further find and believe from the evidence that plaintiff was slowing down as his car approached the crossing, and that his car had almost come to a stop when the plaintiff's car was twenty-five or thirty feet from the crossing, and if you further find that the train was then in the plain view of the plaintiff had he looked for it, and if you further find that plaintiff then suddenly started up again and proceeded across the crossing and was struck by the train, then the brakeman had the right to assume that plaintiff saw the train and would stop before going upon the track, then, under such circumstances, it was not the duty of the defendants to sound any alarm, stop or slacken the speed of the train."

While the foregoing instruction is not a model in fullness and accuracy of statement we think it fairly presented defendants' theory of this phase of the case without prejudice to plaintiff. Defendants' evidence was that the driver of plaintiff's truck even when fifty feet south of the crossing was afforded a plain view of the approaching train from the time it passed the overhead bridge more than 600 feet away; that the truck slowed down almost if not quite to a stop twenty-five or thirty feet south of the crossing when defendants' engine was only 150 feet east of the crossing, but in the brief time

that was required for the head brakeman to change his position and look out of the side window of the cab the truck had moved forward and onto the track. Defendants had a right to submit this state of facts and such being inconsistent with plaintiff's testimony as to the time and manner of his approach and entry upon the track we can think of no reason why the humanitarian rule as applied to the driver of an automobile in close proximity to a pedestrian in Martin v. Fehse et al., 331 Mo. 861, 55 S. W. (2d) 440, and other cases cited by appellant on this point, should govern this instruction which does not call for a verdict.

■ Finally, it is urged that the trial court erred in giving the following Instruction D-3 requested by defendants:

"The Court instructs the jury that it was plaintiff's duty to exercise ordinary care for his own safety while crossing, or attempting to cross, the railroad crossing mentioned in the evidence, and in this connection, if you further find and believe from the evidence in this case that plaintiff drove onto said railroad crossing at a time when defendant's train was nearby and approaching said crossing, and that plaintiff neglected and failed to look and listen for approaching trains, when by the exercise of ordinary care, plaintiff could have seen or heard defendant's train approaching said crossing, and if you further find and believe from the evidence that plaintiff in so doing failed to exercise ordinary care for his own safety, and that such failure on the part of plaintiff directly caused, or contributed to cause, the accident mentioned in the evidence, then and in that event plaintiff is not entitled to recover in this case, and your verdict must be for defendants, unless you further find and believe from the evidence that the defendants, by the exercise of ordinary care, could have avoided the accident after they saw, or by the exercise of ordinary care could have seen, plaintiff in a position of imminent peril."

This cause was submitted only on the charge of negligence under the humanitarian rule. Plaintiff's contributory negligence is no defense to such a charge and when no other ground of negligence is submitted it is not an issue in the case, and we have frequently held that its injection under these circumstances by an instruction such as the above is confusing to the jury and prejudicially erroneous. [Schulz v. Smercina, 318 Mo. 486, 500, 501, 1 S. W. (2d) 113; Reith v. Tober, 8 S. W. (2d) 607, 611, 612, 320 Mo. 725; Silliman v. Laundry Co., 329 Mo. 235, 44 S. W. (2d) 159, 163.] Counsel for appellant say that plaintiff did not elect to submit his case on the humanitarian theory alone but sought to submit primary negligence by his requested instruction P-3 which he still contends was erroneously refused. ■ On appeal we must take the case as submitted under the instructions of the court and determine whether or not the

jury was instructed without reversible error. The fact remains that only one charge of negligence was submitted to the jury and yet by another instruction the jury was permitted to pass upon plaintiff's contributory negligence which was not a defense to the negligence submitted and, hence, not an issue in the case. Respondents' position is not aided by the fact that their withdrawal instructions were refused. The issues at which they were directed dropped out of the case when the court instructed only on plaintiff's charge under the humanitarian rule. [Dietzman v. Screw Co., 300 Mo. 196, 215, 254 S. W. 59, 65; Reith v. Tober, 8 S. W. (2d) 607, 612, 320 Mo. 725.]

Because of error in giving Instruction D-3 the judgment is reversed and the cause remanded for a new trial. All concur.