MARY ANDERSON, BY ROY ANDERSON, HER NEXT FRIEND, RESPONDENT, v. W. F. NORTHROP, RAY NORTHROP AND PEARL NORTHROP, APPELLANTS.—96 S. W. (2d) 521.

Springfield Court of Appeals. September 8, 1936.

1226

*Ruark & Ruark* and *O. R. Puckett* for appellants.

*Leo H. Johnson, James M. Tatum* and *Ray Bond* for respondent.

SMITH, J.—This suit was filed in McDonald County, Missouri, August 10, 1932, from whence it went on a change of venue to the Circuit Court of Barry County, where it lodged September 22, 1933; thence it was changed to the Circuit Court of Jasper County, at Joplin, where on January 24, 1934, by written stipulation it was transferred to the Circuit Court of Newton County, for trial at the February term, 1934.

The plaintiff sought damages for personal injuries. The jury returned a verdict in her favor for $700 against the defendants, W. F. Northrop and Ray Northrop, who have appealed to this court. The suit was also filed against Pearl Northrop, but under the court's direction at the close of the testimony a verdict was returned in her favor.

The case is before us under several assignments of error. We shall consider such of them as we deem necessary, in the order presented.

Both parties have given us a reasonably fair statement of the facts in the case, and we use the respondent's statement of the facts practically as set out in her brief.

On Easter morning, March 27, 1932, plaintiff, Mary Anderson, then thirteen years of age, and some of her young friends, attended an Easter sunrise breakfast along the banks of Hickory Creek a short distance east from Neosho. Around eight o'clock that morning this group of children left for their homes in two automobiles, i. e., a Ford coupe driven by Eleanor North, and a sedan driven by Burney Harbert. There were eight children in and upon the Ford coupe including the driver, Eleanor North and the plaintiff, Mary Anderson.

Eleanor North, the driver of the coupe was fourteen years old; two other youngsters were riding on the seat with her, two were standing on the running board on the right hand side; a boy was

sitting on the back end of the coupe; and the plaintiff and another girl were standing on the running board on the left hand side of the coupe.

The Ford coupe left the place of the breakfast first and as it drove through and out from the United States Fish Hatchery grounds on the highway, which highway is an extension of East McKinney Street in Neosho, the Harbert car approached from the east along such street extended, caught up with the Ford coupe and followed a short distance back of it.

Both cars traveled west to the Kansas City Southern Railway tracks at which point the pavement begins on East McKinney Street and continues west 870 feet to Hamilton Street. In this stretch of 870 feet one street known as St. John Street extends north from East McKinney Street at a point 327 feet west from the tracks; and another much used but unnamed street, referred to in the evidence as an alleyway, extends south at a point 500 feet west from the tracks. There were no other streets leading out from or intersecting with East McKinney Street between Hamilton Street and the tracks of the Kansas City Southern Railway Company. St. John Street was a paved street twenty-four feet in width, the alleyway was a gravel road fifteen to twenty feet wide with a paved crossing entrance sixteen feet in width, and East McKinney Street was a paved street thirty feet in width.

Defendants, W. F. Northrop and Pearl Northrop, husband and wife, and their son, Ray Northrop, were at the time in question making their home on a farm near Rocky Comfort in McDonald County, Missouri, although the young man had been for some months in attendance at the Missouri University. Following a short vacation, the son was returning to school that morning. The Northrops had borrowed a Chevrolet sedan of Leona Flaxbeard, sister of Mrs. Northrop, in which car the defendants were riding at the time the injuries complained of by plaintiff were sustained. Mr. and Mrs. Northrop were riding with their son to the depot at Neosho intending to drive home in the Chevrolet car after seeing their son on the train.

The defendants drove into Neosho on what is known as East McKinney Street (extended) running east and west along the north side of the United States Fish Hatchery which lays east from the Kansas City Southern Railway tracks and south of East McKinney Street (extended). The Ford coupe left the United States Fish Hatchery by the north entrance, emerging a short distance in front of the Harbert car then approaching from the east in front of the Northrop or Chevrolet car. These cars traveled west across the tracks. The Ford coupe continued on west, but the Harbert car turned north on St. John Street.

When the Northrop car had shortly crossed the tracks, and, when

the Harbert car was turning north into St. John Street, the defendants observed the Ford coupe ahead. At that time the Ford coupe was approximately two car lengths west of St. John Street and the Chevrolet car was approximately 100 to 150 feet east therefrom with the speed of the Chevrolet car at twenty-five to thirty miles an hour and the speed of the Ford coupe at ten to fifteen miles per hour. The Ford coupe was then approximately 150 feet east from the crossing into the alleyway and the Chevrolet car approximately 300 feet east therefrom.

When the Ford coupe arrived at approximately seventy-seven feet east of the alleyway—halfway between the two houses on the south side of East McKinney Street—Eleanor North said she held out her left hand to signal that she was going to turn south, and thereafter gradually inclined her car into the alleyway. The two girls, Mary Anderson, the plaintiff, and Bobbie Ann Stroop, were standing on the left running board of the coupe, Eleanor North said she had looked in the rear vision mirror and had been unable to see any car approaching.

The Ford coupe made the turn south to enter the alleyway and was approaching the entrance of the alleyway. The Chevrolet car was then approaching from the east at a speed of about twenty-five miles per hour. At the turn, the Ford coupe had gradually decreased its speed.

The riders in the Chevrolet said they did not see any signal given by the North girl nor any signal given by anyone. The Ford began to turn south before it reached the center of the alleyway, in fact the Ford was on the left hand side of the alleyway as it approached the alleyway and as the collision occurred. The record shows that prior to the attempt to turn into the alleyway the coupe was being driven on the right hand side of East McKinney Street, which was a paved street and thirty feet wide and the defendants were following the coupe, and that the defendants undertook to pass the coupe and pulled to the left and started to pass. As the defendants approached and were nearing the coupe, the coupe turned to the left and in front of the defendants. Ray Northrop seeing the coupe turning in front of his car swerved his car to the left to avoid a collision, but distance was so short that he ran into the curbing at or just before the corner at the alleyway and at the same time collided with the coupe, which clearly shows that the coupe was entering the alley on the left hand side.

Bobbie Ann Stroop saw the Chevrolet car in sufficient time to jump from the left running board of the Ford coupe to the front part of the Chevrolet but the plaintiff did not see the Chevrolet in sufficient time to jump and avoid injury. Both bones of plaintiff's right leg were fractured about six inches above the ankle and a lot of flesh

scraped from the back part of her right leg, the same extending about five inches in one direction and leaving a scar. Plaintiff was confined to the hospital for two weeks and at her home for some six weeks longer with a cast on her leg. The wound had healed at the time of the trial, leaving a noticeable scar or blemish. The jury were permitted to see this scar.

One witness testified that W. F. Northrop said (after the collision) that the brakes on the Northrop car would not hold. No one else heard this. It was denied by Northrop and there was evidence that the brakes were in good condition. Ray Northrop says he did not hear it and no witness says he was in hearing distance.

Shortly after the accident W. F. Northrop said to Roy Anderson, father of plaintiff, that he was driving the car. He later said this was not true, and gave as his reason for making this statement that he was in a strange town, surrounded by strangers, and that he thought that his son might be detained and not be able to go on to school, and so said he was the driver. Afterwards Mr. Northrop informed Mr. Anderson that his son was driving the car. W. F. Northrop testified to this fact in his deposition taken before trial, as did all the other witnesses who professed to know. Plaintiff brought and submitted her case to the jury upon the theory that she did not know, and that the jury might find that either was driving.

We quote the following excerpts from Eleanor North's testimony:

"I have not measured the distance from the scene of the accident and the point I held out my hand." . . . "The first notice I had that a car was approaching or that there was going to be an accident, I heard someone say 'here comes a car.' That was just an instant before the collision . . . We had slowed down after crossing the railroad tracks. I had slowed down to turn into the alley. I heard someone and I knew I was on the right side of the street. The time I first put out my hand was just before we got to the alley. It was on the north side of McKinney Street. Just as I got half way between the houses and of course gradually started turning the wheels into the alley. When I made the turn I didn't know there was a car behind me. I looked in the glass to see. I could not see on the street. That was because of a number of people right behind on the back and I did not see anyone when I started to make the turn. When I started to turn someone said there was a car behind. I don't believe we had crossed the center line and that was the first I learned there was a car behind me. Someone said 'here comes a car.' When they said 'here comes a car' it naturally sounded like something was going to happen and I thought, of course, I was in the right and I did not even look. I did not turn around and look at the car but I knew it was there. I understood when

they told me that something was wrong. And then I proceeded on across here into the alley."

The first assignment of error is as follows:

"The court erred in overruling defendants' demurrer to the evidence and submitting the cause to the jury, for the reason that there was not any evidence that, after the defendants discovered or should have discovered, the plaintiff in a position of peril, they could have avoided the injury with the means at hand."

We think there was sufficient evidence to go to the jury on the point raised in this assignment. We must keep in mind that under this assignment the evidence must be considered in its most favorable light to plaintiff.

We find from an examination of the testimony that Eleanor North, who was driving the Ford coupe on which plaintiff was riding testified that she extended her hand as a signal that she was going to turn when she was half way between the two houses located on the south side of the street, and started turning the Ford then towards the alley. A plot was introduced in evidence which showed this point to be seventy-seven feet from the alleyway into which the Ford attempted to enter.

Ray Northrop testified that at the time the Ford coupe was thirty feet from the alley the Chevrolet was already on the left hand side of the street and approximately thirty feet behind the Ford, and that he slowed down the Chevrolet to twenty miles per hour, and estimated that he could have stopped the Chevrolet in twenty feet. Ray Northrop and W. F. Northrop both said that they saw the plaintiff and another riding on the left running board of the Ford. This evidence was sufficient to make it a question as to whether the plaintiff was in a position of peril as the Ford began to turn towards the alley, and as to whether the Chevrolet could have been stopped before striking her.

Witness, Raymond Couch, said he was seated on the back of the Ford coupe and that he saw the Chevrolet coming from the east about ninety feet from the Ford and that at that instant the Ford was beginning to turn to the left, and he said the Chevrolet ran the ninety feet while the Ford was turning approximately fifteen feet.

Under the above testimony we think it was properly a question for the jury under the humanitarian doctrine, and that the trial court did not err in submitting that issue to the jury. This issue was submitted to the jury under the following instruction.

"You are instructed that if you find and believe from the evidence that on the 27th day of March, 1932, the plaintiff was riding on the left running board of a certain Ford automobile coupe which was being driven in a westerly direction on East McKinney Street in the City of Neosho, Missouri, and if you further find that said East McKinney Street was a public street and highway in said City of Neosho, and if you further find that the driver of said Ford coupe

turned the direction of same to the south for the purpose of driving onto a north and south public thoroughfare or street which intersected said McKinney Street, and if you further find that the defendant Ray Northrop was driving a Chevrolet sedan automobile west on said East McKinney Street and back of and following said Ford coupe, and if you further find that, as said Ford coupe was making said turn to the south, the said Chevrolet sedan ran into and struck the plaintiff and injured her, and if you further find that the defendant Ray Northrop saw, or by the exercise of the highest degree of care could have seen that plaintiff was in a position of imminent peril and danger of being struck and injured by said Chevrolet sedan, and if you further find and believe from the evidence that thereafter, said Ray Northrop could with safety to himself and the other persons in said Chevrolet sedan, have stopped the said Chevrolet sedan or checked its speed or turned it aside and could thereby have avoided striking plaintiff, then you are instructed that the failure of said Ray Northrop to do so, if he did so fail, constituted negligence, and if you find and believe that such negligence, if any, on his part, directly caused the plaintiff to be struck and injured, then your verdict will be for the plaintiff and against the defendant, Ray Northrop; and this is true even though you may further find and believe from the evidence that the plaintiff was negligent in riding upon the running board of said Ford coupe.''

Another instruction was given exactly as the above except that it included the name of W. F. Northrop as the driver.

We are basing our conclusions as to the submission under the humanitarian doctrine on the following cases: Rogers v. Crown Coach Co. (Mo. App.), 68 S. W. (2d) 729, 731, and cases there cited; Hart v. Weber (Mo.), 53 S. W. (2d) 914; Spoeneman v. Uhri (Mo. App.), 60 S. W. (2d) 9; Willhauck v. Chicago R. I. & P. Ry. Co. (Mo.), 61 S. W. (2d) 336.

As to which of the Northrops was driving the car, we think it became a question for the jury, and it was not error to submit the two instructions. The proof was that immediately after the collision W. F. Northrop said he was driving. Some months later he said that his son Ray was driving. He explained that the reason he first said that he was driving was because he wanted his son to catch a train and go on to school, and feared that the son might be detained if it were known that the son was driving the car. It was competent to introduce in evidence the statements of W. F. Northrop that he was driving. This evidence made it an issue for the jury to become the judges of the credibility of the witnesses and the credit to be given their testimony and of the issues of fact involved therein. [Simmons v. K. C. Jockey Club (Mo.), 66 S. W. (2d) 119, 123; Parrent v. M. & O. R. Co. (Mo.), 70 S. W. (2d) 1068, 1073.]

The defendant contends that the court erred in submitting to the jury the question of defendants' liability upon the ground that they were joint adventurers. We hold this point against the defendants for the testimony is that W. F. Northrop and his son Ray went together to the home of Leona Flaxbeard and together arranged to borrow the car for the purpose of taking Ray to the railway station in Neosho where he was to entrain for his return to the University of Missouri; that the arrangements were that W. F. Northrop was to drive the car back to the owner's residence. Under these facts and those heretofore mentioned there was substantial evidence upon which to submit the question of joint adventure to the jury. [See Counts v. Thomas, 63 S. W. (2d) 416, 419, and cases there cited.]

The defendants in their third assignment insist that the plaintiff and Eleanor North, the driver of the car, were joint adventurers, and that this joint venture placed the responsibility of the driver's negligence upon the plaintiff, and insists that the driver was negligent in failing to give the proper signal in making the left turn, and in turning before she had passed beyond the center of the intersection of the street, and in the fact that the driver was an infant under the age permitting the driving of cars in Missouri, and that the plaintiff was thus guilty of contributory negligence as a matter of law.

Since we have decided that the evidence was sufficient to go to the jury under the humanitarian doctrine, we think there is no merit to the contentions under this assignment. [Wholf v. K. C. Clay County & St. Jo. Ry. Co. (Mo.), 73 S. W. (2d) 195.]

The defendants complain of giving conflicting instructions, in that instructions 1, 2, 3 and 4 have to do with the issues under the humanitarian doctrine, and that instruction No. 6 submitted the injury as being directly due to defendants' failure to have proper brakes upon the car.

From what we have heretofore said we think under the pleadings and the evidence in the case there was brought into the case the question of the humanitarian doctrine, and it was not error to give instructions submitting that issue to the jury. There was also in the case primary negligence and one of these claims was that the car used by defendants had defective brakes and this issue was submitted to the jury by instruction No. 6. It was not error to submit the case on the theory of defective brakes if that were part of the issues, and there was evidence to that effect, as in this case.: [See Wholf v. Ry. Co., 73 S. W. (2d) 195.]

The defendants complain of error in the giving of instruction number 9, which is as follows:

"You are instructed that the burden of proof is upon the defendants to show that the injuries to plaintiff, if any, were caused by her own carelessness and negligence directly contributing thereto,

and before you can find against the plaintiff on the ground of contributory negligence, the defendant must establish such contributory negligence by a preponderance or greater weight of all the evidence in the case.

"And you are further instructed that by the term 'negligence' as used in this instruction, means that degree of care which an ordinarily prudent person would use under the same or similar circumstances."

We think it was error to give this general instruction, worded as it is, on contributory negligence. Much has recently been said by our Supreme Court and the appellate courts with reference to instructions on contributory negligence. It is sufficient here to say that two rules have been definitely determined; that is, first, a party who alleges specific negligence cannot go to the jury on general negligence, and second, under a general plea of contributory negligence an instruction submitting the issue of contributory negligence must be predicated on the negligence which the evidence tends to show. [See Watts v. Moussette et ux (Mo.), 85 S. W. (2d) 487, and cases there cited; Grimes v. Red Line Service, Inc. et al. (Mo.), 85 S. W. (2d) 767; Killian v. Albert Wenzlick Real Estate Co. (Mo. App.), 89 S. W. (2d) 716.]

We must and do hold that the giving of the above instruction was error, so much so that this judgment cannot stand.

For the giving of this instruction this judgment should be reversed and the cause remanded for another trial. It is so ordered. *Allen*, *P. J.*, and *Bailey, J.*, concur.