AMELIA BODE v. ROLLA WELLS, Receiver for UNITED RAILWAYS COMPANY, Appellant.—15 S. W. (2d) 335.

Court en Banc, March 27, 1929.

*T. E. Francis, J. F. Evans, B. G. Carpenter,* and *Curlee, Nortoni & Teasdale* for appellant.

*A. A. Alexander* and *Charles E. Morrow* for respondent.

WALKER, J.—The plaintiff sues for damages on account of personal injuries alleged to have been inflicted through the negligence of the defendant. There was a trial to a jury resulting in a verdict in favor of the plaintiff in the sum of $8000. From the judgment rendered thereon the defendant has appealed.

The defendant operates a street car line in the city of St. Louis, locally designated as the "Hodiamont Line." At the point where the plaintiff received her injuries the defendant has double tracks, the cars on the east side of the right of way run in a northerly direction, while those on the west side run in a southerly direction. These tracks cross Minerva Avenue, a public street, at right angles. The distance between the rails of each of these tracks is four feet and ten inches, and the distance between the inner rails of the two tracks is six feet and ten inches. The defendant maintains a concrete platform on the west side of these tracks immediately north of the north line of Minerva Avenue. This platform is a regular stopping place for southbound cars to take on and let off passengers.

The plaintiff was walking westwardly on the north side of Minerva Avenue, and approached the tracks from the east. When she drew near she saw, about a block and a half away, a southbound car running at a rapid rate of speed. Desiring to take passage on it she waved an umbrella she had in her hand as a signal to the motorman to stop at the platform. Believing that he would do so and that she would have time to cross the track and reach the platform she started across the tracks and as she stepped upon the track on which the car was approaching she was struck by it and received the injuries for which she asks damages. The plaintiff, who is an elderly woman, seventy-five years of age, was subjected to a grilling cross-examination by counsel for the defendant for the purpose of showing that she heedlessly stepped in front of the car. The nervous strain to which she was subjected by this examination, clearly demonstrated by the record, caused her, as she states, to be unable to state the distance of the car from her at the time she stepped upon the track. By comparisons made by the examining counsel she finally stated that it was distant a little more than thirty feet. The attention of a witness who lived near the crossing was drawn to the scene of the accident by the noise made by the sudden application of the brakes of the car after the plaintiff was struck. Running out of her yard this witness saw the plaintiff lying up against a telegraph pole on the side of the right of way where she had evidently been thrown by the impact of the car. Several persons assisted in carrying the plaintiff into a near-by residence. She was unconscious and

covered with blood. She had a large hole or wound on the right side of her head. Her entire right side was cut and bruised, including her hand and arm. Her collar bone was fractured and a ragged portion of it stuck out through the muscles, skin and clothing. About an hour after being struck the plaintiff, under the ministration of a physician, begun to regain consciousness. She was confined to her bed for five or six weeks after the accident; during three or four weeks of that time she was under the daily care of a physician; thereafter to the date of the trial she has been under his care, but not daily. For six or seven months after she was injured she was not able to leave her home, and since that time she is only able to do so under the care of an attendant. The physician under whose care she has been, testified that, in addition to the serious character of her other injuries, the injury to her head had impaired her mental capacity. His testimony is as follows: "The concussion of the brain may or may not have helped this mental deterioration, but I can say that having known her before the injury her mental capacity is nothing like it was before, not as good as it was before."

There were six specifications of negligence in the petition. The answer consisted of a general denial and a plea of contributory negligence on the part of the plaintiff. The reply was a general denial. The plaintiff requested no instructions, save one on the measure of damages. The court withdrew from the jury all of the specifications of negligence charged in the petition, except that of the last clear chance or humanitarian doctrine and submitted this to the jury under an instruction of its own motion. The defendant introduced no testimony, but at the conclusion of the plaintiff's case requested an instruction in the nature of a demurrer to the evidence which was overruled.

I. The facts in this case disclose but one basis of liability and that is under the humanitarian rule. The application of this rule eliminates the defense of contributory negligence.  [Schroeder v. Wells, 310 Mo. 642, 654, 276 S. W. 60, 64.] The defendant contends, because the evidence shows that the plaintiff saw the street car and knew it was coming, that she cannot invoke the humanitarian rule. This court in a number of cases has settled this question adversely to the contention of the defendant.

The most recent consideration of the rule, as applied in this State, is found in an illuminating opinion of RAGLAND, J., in Banks v. Morris & Co., 302 Mo. 254, 266, 257 S. W. 482, in which it is said: "The doctrine from which the rule has been evolved is something more than an exception to the law on contributory negligence. It

'proceeds upon the precepts of humanity and of natural justice to the end that every person shall exercise ordinary care for the preservation of another after seeing him in peril or about to become imperiled, when such injury may be averted without injury to others.' [Dey v. Railways, 140 Mo. App. 467.] Under this doctrine 'the position of peril' is one of the basic facts of liability; it might be denominated the chief one. [State v. Trimble, 300 Mo. 92, 253 S. W. 1014, 1019.] It is of no consequence what brings about, or continues, the situation of peril. It may be through the obliviousness of the one imperiled, or through his inability to extricate himself from his environment, or through his efforts to rescue another, or through his sheer hardihood or recklessness. But regardless of what occasions his peril, the law out of its extreme regard for human life makes it the duty of another who sees him in peril to exercise ordinary care to prevent injury or death. [Murphy v. Railroad, 228 Mo. 56; Morgan v. Railroad, 159 Mo. 262; Hanlon v. Railroad, 104 Mo. 388.] The constitutive facts of a cause of action under the humanitarian rule, stated in their simplest terms, without any of the refinements, limitations or exceptions which might arise on a particular state of facts, are contained in this formula: '(1) Plaintiff was in a position of peril; (2) defendant had notice thereof (if it was the duty of defendant to have been on the lookout, constructive notice suffices); (3) defendant after receiving such notice had the present ability, with the means at hand, to have averted the impending injury without injury to himself or others; (4) he failed to exercise ordinary care to avert such impending injury; and (5) by reason thereof plaintiff was injured.' Evidence tending to prove these facts makes a prima-facie case for plaintiff. In some instances obliviousness of danger on the part of the plaintiff is necessary to make the situation in which he is placed one of peril. In such case it is of course incumbent upon the plaintiff to make proof of the facts and circumstances tending to show obliviousness, not only for the purpose of establishing that he was in a position of peril, but to bring home to defendant a knowledge of his peril. In these cases, however, obliviousness is but a subsidiary or evidentiary fact; the perilous situation of plaintiff and defendant's knowledge of it are the ultimate, issuable facts.''

The facts as set forth in the general statement contain ample proof of the presence of the essentials defined in the Banks case necessary to authorize the invoking of the humanitarian rule as a basis of the defendant's liability. An excerpt from the testimony of A. B. Bartlett, a disinterested witness for the plaintiff, tends to emphasize the correctness of the foregoing conclusion. It is as follows:

"Q. Please state to the jury if you saw Miss Bode when she was approaching the first rail. A. Sure.

"Q. That is the rail on the east? A. That is right.

"Q. Did you see her there? A. Yes, sir.

"Q. I will ask you whether or not you saw a street car at that time, coming from this direction up here? (pointing to the north). A. I did, I was going to catch it; after I saw it I was going to catch it coming into town.

"Q. What time of day was that? A. About 1:05 P. M.

"Q. Did you at the time Miss Bode approached the east rail, and before she started over the tracks, did you see her? A. I did.

"Q. And how far away was the street car at that time? A. I am estimating it was about 300 feet, as close as I could guess at it about 300 feet.

"Q. With reference to the block north of Minerva Avenue, where was the street car? A. The street car was way up in here, in this block.

"Q. Now, as Miss Bode got between the two sets of rails, right here, did you notice about how far away the street car was? A. Yes, sir.

"Q. About how far? A. About 150 feet.

"Q. Then, as she started over how far away was the street car then? A. About seventy-five feet."

II. It is contended that the testimony of Bartlett is not tenable and hence that there was no evidence of sufficient probative force to take the case to the jury, in that it did not show that the plaintiff was not in peril until she stepped upon the track on which the car was running when by the exercise of ordinary care the defendant's motorman could have seen her peril in time to have stopped the car and averted her injury.

The evidence shows that plaintiff was walking directly across the tracks, and was holding aloft a closed umbrella, waving it and signalling the motorman to stop, before she even reached the east rail of the northbound track, and that at that time the street car was more than a block away. If the motorman had been on the lookout, as was his duty, he could have seen that the plaintiff was going to cross the tracks to the platform and expected him to stop the car and take her on as a passenger. The danger zone, under the facts of this case, was not limited to the time that she actually stepped upon the east rail of the southbound track on which the car was running. When she stepped upon the east rail of that track the car was about seventy-five feet away from her. The evidence also shows that the car was running twenty-five miles an hour and that it could have been stopped within seventy feet. That its speed was not slackened before it struck her is evident from the fact that

by the impact of the car she was thrown over on the right of way' against a telegraph pole, and that the car ran ninety-five feet beyond where it struck her before it was stopped. These are indisputable facts which not only attest the verity of the witness Bartlett's testimony, but bring the case within the purview of the humanitarian rule.

III. It is contended that error was committed in the admission of the testimony of Dr. Lewis, to the effect that the plaintiff's mental condition was not what it was before her injury. The allegations of the petition are: "That plaintiff suffered a fracture of the skull, causing plaintiff to be rendered unconscious and causing her to suffer permanently of insomnia, vertigo, headaches and general weakness, and a severe and permanent nervous shock to her entire nervous system, and plaintiff sustained a severe and great and permanent concussion of the brain." Under these averments the testimony was admissible as "a symptom attendant upon or tending to show a fracture of the skull." [Rosenweig v. Wells, 308 Mo. l. c. 636, 273 S. W. 1071.]

IV. Error is assigned in the admission of the testimony of a witness for the plaintiff named Smith. The first objection to his testimony is to the effect that he was not shown to be qualified to testify as an expert. His examination in this regard demonstrates the lack of merit in this contention. It was shown that he was not only familiar from years of experience with the starting, stopping and speed of cars and of the equipment of the character here under review, but that his familiarity included the cars and equipment of the Hodiamont line at the time of this accident. The second objection to this witness was that he was not qualified to testify to the hypothetical question put to him. This question called for the witness's conclusion concerning matters with which he had been shown to be familiar and not that any essential, required in a hypothetical question, was not included therein. The facts in this case concerning the qualification of this witness are very similar to those in Phillips v. East St. L. & S. Ry. Co., 226 S. W. (Mo.) 863. In that case it was held that:

Where a witness testified that he had been a locomotive engineer 25 years, that he had served as a motorman for three years and a motor inspector for some months, and was familiar with defendant's electric cars, he was properly allowed to testify as an expert concerning the distance in which a car moving at twenty miles per hour could be stopped as against objection that he had not been shown to possess the necessary qualifications, and that the cars had not been described.

·The objection, therefore, to the witness in the instant case is overruled.

V. Notwithstanding the fact that the petition in the instant case alleged six specifications of negligence the trial court withdrew from the jury all of these except that of the last-clear-chance or humanitarian doctrine. In this condition of the record the review of this case has been limited to this issue. This course is authorized under the rule announced in Phillips v. Railroad, supra, in which it is held in effect that where the petition in an action against a street railroad company contains numerous assignments of negligence, but all except the assignment invoking the humanitarian doctrine were abandoned at the trial, only that one need be considered in determining the sufficiency of the petition. While in the instant case the sufficiency of the petition is not assailed the action of the trial court left, as the only issuable fact, the propriety of the application of the humanitarian doctrine. The rule invoked, therefore, in the Phillips case may appropriately be applied here.

There being no reversible error the judgment of the trial court is affirmed. All concur.