Rose SILVERSTEIN, Plaintiff-Respondent,

v.

ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, Defendant-Appellant.

No. 45336.

Supreme Court of Missouri.
Division No. 2.
Nov. 12, 1956.

**.38**

Lester F. Stephens, St. Louis, for appellant. Lloyd E. Boas, St. Louis, of counsel.

Hullverson & Richardson, St. Louis, for respondent.

BARRETT, Commissioner.

Mr. Henry Silverstein, sixty-four years old, and his wife, Rose, resided at 6165 Delmar Boulevard. On October 12, 1954, about eleven o'clock in the morning, Mr. Silverstein attempted to walk across Delmar, in the middle of the block between Skinker Boulevard and Rosedale Avenue. Delmar is about seventy-six feet wide and there are eastbound and westbound streetcar tracks in the middle of the street. When Mr. Silverstein reached the center of the westbound tracks he was struck by a westbound streetcar, "knocked down and fell under the front end of the streetcar" and was rolled or dragged thirty or forty feet. In this action for his death "from any injury resulting or occasioned by the negligence", V.A.M.S. § 537.070, of the St. Louis Public Service Company in the operation of the streetcar Mrs. Silverstein has recovered a judgment of $15,000. Upon this appeal the St. Louis Public Service Company contends that the trial court should have sustained its motions for a directed verdict and, consequently, that the court erred in giving the jury instruction number one for the reasons, one, that the evidence did not warrant a submission of the appellant's negligence in the respects submitted in the instruction and, two, there was no evidence to support a finding that Mr. Silverstein died "as a direct result of injuries received in the collision."

Under the statute, V.A.M.S. § 537.070, the essence of the widow's cause of action is the fact that her husband's death was proximately caused by the defendant's negligence and, of course, the burden is upon her not only to show negligence but to show by direct or circumstantial evidence that her husband died, as the appellant says, "as a direct result of injuries received in the collision." 16 Am.Jur., Sec. 307, p. 209; Herke v. St. Louis & S. F. R. Co., 141 Mo. App. 613, 125 S.W. 822. In her petition Mrs. Silverstein alleged that her husband died on October 12, 1954 "as a direct result of injuries sustained by him." As to the specific allegation the appellant answered that it was without sufficient knowledge or information to form a belief as to the truth of the allegations respecting the cause of Mr. Silverstein's death. Incredible as it may seem, there was no direct testimony, either lay or expert, that Mr. Silverstein died as a result of being struck by the streetcar. However, Mrs. Silverstein testified that she was the widow of Henry Silverstein "who was killed on the 12th of October, 1954." She testified, without objection, to the expense of his funeral which she had paid. The defendant offered to show that she had recovered certain insurance benefits "as a result of his death" and tendered an instruction which had the effect of offsetting $2,255 insurance benefits from any sum she might be awarded.

Bryan Woodson was the operator of the streetcar that struck Mr. Silverstein and in arguing his case defense counsel urged the jury to find, particularly under the evidence as it might relate to the humanitarian doctrine, that Mr. Woodson was not negligent in operating the streetcar and striking Mr. Silverstein. After so arguing he made this appeal to the jury: "As the judge has told you, the lawyers won't agree upon the testimony, that's the reason why we call twelve people in here from the community to decide these matters. So you decide it on the basis of justice and fairness to the parties, *as to whether or not Mr. Woodson should be charged with killing this man,* when it's not Mr. Woodson's fault whatsoever. There is nothing he could do about it. * * * I have tried to make this clear, that you are not to consider the matter of measure of damages, what this lady should recover, *until such time as you have found Mr. Woodson was responsible for killing this man, and I don't think you are going to find that.* So Mr. Hullverson talking about the agreement on that score, and the like, makes no difference. I don't even choose to talk about it, because I don't think you are ever going to get that far, *because I don't think you can possibly find Mr. Woodson at fault in killing this man."* In conclusion counsel said, "Mr. Woodson didn't see the man cross to the south but there was no charge upon him to see that. He saw the man when it mattered. He did everything he could, and I ask you not to charge him for this occurrence." In the principal instruction the jury was required to find "that Mr. Silverstein was injured so that he died as a direct result" of the negligence hypothesized in the instruction.

■ In these particular circumstances Mr. Silverstein's death from being struck by the streetcar was an uncontroverted fact and the only reasonable inference from the record is that the parties, both the plaintiff and the defendant, treated the fact as established or true; in short, they tacitly assumed the fact and for that reason the appellant may not complain that it was not established by direct evidence or was hypothesized in the instructions. 88 C.J.S., Trial, § 282, p. 773; Morris v. Equitable Assurance Society, 340 Mo. 709, 719, 102 S.W.2d 569, 574; De Valpine v. New York Life Ins. Co., Mo.App., 105 S.W.2d 977, 979; Masterson v. St. Louis Transit Co., 204 Mo. 507, 520, 103 S.W. 48, 52. Mr. Silverstein's death by reason of being struck by the streetcar having been assumed or tacitly conceded by the parties, the situation is analogous to an instruction's assuming a fact, even an essential one, when there was no real issue in the case as to its existence. Hanser v. Lerner, Mo. App., 153 S.W.2d 806, 811; Davidson v. St. Louis Transit Co., 211 Mo. 320, 356, 109 S.W. 583, 593; Stauffer v. Metropolitan Street Ry. Co., 243 Mo. 305, 333, 147 S.W. 1032, 1040; State ex rel. Fourcade v. Shain, 342 Mo. 1190, 119 S.W.2d 788; 5 C.J.S., Appeal and Error, § 1759, p. 1078.

The meritorious, litigated issue was the plaintiff's right to recover and the defendant's liability under the humanitarian doctrine. Upon this issue the appellant contends that there "was not sufficient evidence" to warrant a submission of failure to slacken speed or failure to warn within the meaning of the humanitarian doctrine and, therefore, these issues should not have been submitted to the jury. The essence of the appellant's argument is that under the most favorable view of the evidence "there was not over a second of time that passed from the time the deceased entered the zone of 'imminent peril' until he was in the path of the overhang of the westbound streetcar" and *thereafter* there was nothing the operator of the streetcar could do to avoid striking Mr. Silverstein. The motorman said that his streetcar was traveling at a speed of about fifteen miles an hour and the first time he saw Mr. Silverstein he was thirty to thirty-five feet away. His brief version of the occurrence was this: "When I seen him he was run-

ning from in front of an eastbound car and he was running a little bit on an angle towards the west, you know, northwest, and he had his head turned to the west watching the westbound traffic, I suppose, I don't know, but as soon as I seen him running I immediately put on my brakes, into emergency, and I don't—the man never knew that I was any ways near him until just before I hit him, he looked right up at me, and he threw up his hands. With the bell sounding and all, he still didn't hear me." When Mr. Silverstein was almost in the middle of the track the center of the streetcar, "just to the left of the headlight," struck him and, therefore, it is said that this is not an " 'almost escaping case.' " Stith v. St. Louis Public Service Co., 363 Mo. 442, 251 S.W.2d 693, 698, 34 A.L.R.2d 972. In these circumstances it is urged that not over a second of time passed "from the time the deceased entered the zone of 'imminent peril' until he was in the path of the overhang of the westbound streetcar" and that failure to slacken or failure to warn and consequent liability under the humanitarian doctrine could not be found or based in these respects on such split-second timing. Yeaman v. Storms, 358 Mo. 774, 217 S.W.2d 495; Vietmeier v. Voss, Mo., 246 S.W.2d 785; Smith v. Siedhoff, Mo., 209 S.W.2d 233. This, however, is not the most favorable view of the evidence.

In setting forth the appellant's contention we have not detailed and analyzed the testimony of the various witnesses and it is not necesssary in stating the facts favorably to the plaintiff and as the jury could have found them to do so. But, as we have said, Delmar Boulevard is about 76 feet wide and there are eastbound and westbound streetcar tracks in the middle of the street. The gauge of each track is 4 feet 10 inches and there is a space of 5 feet 4 inches between the tracks. The collision occurred in the middle of the block about 300 feet east of Skinker Boulevard and witnesses saw the westbound streetcar when it was from 300 to 500 feet away. Some of the witnesses said that it traveled

at an undiminished speed of 30 to 40 miles per hour, some said 25 to 30, others said 20 to 25, and, as noted, the motorman said 15 miles per hour. In describing Mr. Silverstein's conduct some of the witnesses said that he traveled or ran "as fast as an old man could," the motorman said that his gait was "a jump or hop like scared," and another said that "he was walking at a fairly fast rate of speed. * * * Possibly three miles an hour, four." Mr. Silverstein left the curb and walked over the westbound tracks, southwardly, and when he was about the center of the eastbound track he looked west and saw the approaching eastbound traffic, "he looked like he was in trouble there, he couldn't go either way. * * * it looked like he become excited *and he pivoted around*" and started back north, northwestwardly the motorman and others said, and was struck when he reached the middle of the westbound car tracks. Everyone concedes that he "pivoted," the crucial issue between the parties is when and where he pivoted,—at one point in his testimony the motorman said that when he first saw him he was "about two feet south of the eastbound car track" running towards the north. One of the appellant's witnesses said that he traveled at a "cater-corner angle" from the middle of the eastbound streetcar track, a distance of about 15 feet before he was hit.

The zone of imminent peril was not, as the appellant infers, when he "would be in the path of the streetcar." Kent v. Kiel, Mo.App., 97 S.W.2d 885, 888–889. From the testimony of one witness it is a reasonable inference that when Mr. Silverstein pivoted "he was in trouble there, he couldn't go either way," and, while we do not know with certainty the time or distance he did so, the motorman said that he never saw the streetcar "until just before I hit him" and that fact would widen the zone of peril. Crews v. Kansas City Public Service Co., 341 Mo. 1090, 1098, 111 S.W.2d 54, 57. He was walking northwestwardly, diagonally, we do not know the degree of

the angle but whatever it was that also extended the zone of peril. Ellis v. Metropolitan St. R. Co., 234 Mo. 657, 138 S.W. 23. The motorman had the duty of maintaining an observant, intelligent lookout, Ferdente v. St. Louis Public Service Co., Mo., 247 S.W.2d 773, 778, and "to act upon reasonable appearances of obliviousness at a time when such action would be effective". Lefkowitz v. Kansas City Public Service Co., Mo., 242 S.W.2d 530, 532. The parties disagree as to where the streetcar was when Mr. Silverstein pivoted and started traveling the 15 feet to the point where he was struck, but the argument concerning the testimony on this phase of the case is beside the point. Admittedly, the front end of the streetcar struck the man and he was then in the middle of the track. Without actually making the several possible computations, depending on the distances and speeds Mr. Silverstein may have traveled, the distance the streetcar must have been away from him when he pivoted, or when he was in or about to enter the danger zone, Elkin v. St. Louis Public Service Co., 335 Mo. 951, 956, 74 S.W.2d 600, 603, is a matter of simple mathematical calculation and produces a distance of 75 to 100 feet, possibly more. McGowan v. Wells, 324 Mo. 652, 666, 24 S.W.2d 633, 639; Hoodenpyle v. Wells, Mo.App., 10 S.W.2d 331, 333. As the appellant urges, the plaintiff introduced no oral evidence as to "the rate of 'slackening' possible under the circumstances," but again the indisputable fact was, as the motorman conceded, that the streetcar actually stopped in 30 to 40 feet after its impact and that fact is circumstantial if not direct evidence, Lang v. St. Louis-San Francisco Ry. Co., 364 Mo. 1147, 1155, 273 S.W.2d 270, 275; Perkins v. Terminal R. Ass'n, 340 Mo. 868, 102 S.W.2d 915, of what could and should have been done and of the fact that its speed could have been sufficiently slackened in the same distances at the same speeds in time to have avoided striking Mr. Silverstein. Bode v. Wells, 322 Mo. 386, 394–395, 15 S.W.2d 335, 337;

Harrell v. Berberich, 359 Mo. 551, 555, 222 S.W.2d 733, 735.

The appellant does not contend that there was no evidence of the motorman's failure to timely signal, its argument that the plaintiff failed to make a submissible case of failure to warn is based in part upon its contention that "but a second of time passed until the deceased was in the path of the streetcar" and that thereafter the efficacy of a warning would be sheer speculation. Smith v. Siedhoff, supra. In view of Mr. Silverstein's conduct as and after he pivoted "and started back in panic," it is urged that it is unreasonable to believe that he would have heeded a warning or, in the circumstances, that a failure to warn could have been a proximate cause of the collision. What we have said with respect to failure to slacken speed may be sufficient to dispose of the split-second argument. As to the second contention, if there was a submissible case of failure to warn, whether Mr. Silverstein would have heeded the warning and proximate cause were, of course, questions for the jury to resolve and could not be declared as a matter of law. Lefkowitz v. Kansas City Public Service Co., supra; Marczuk v. St. Louis Public Service Co., 355 Mo. 536, 196 S.W. 2d 1000.

In conclusion it is contended that the trial court prejudicially erred when it overruled the appellant's objection to counsel's argument "that the defendant was negligent in failing to give plaintiff's decedent a 'break' when the latter was 'trapped' by eastbound automobiles." It is said that there was no issue concerning the negligence of the motorman in failing to see Mr. Silverstein "trapped" by automobiles and that the argument presented a false issue and permitted the argument of "antecedent negligence." The argument and the context in which it was made was this: Plaintiff's counsel read and was discussing the humanitarian instruction. He had argued that there was a failure to warn and then he

**42**

read that part of the instruction which said, "and this is true even if you find and believe from the evidence that Mr. Silverstein himself was guilty of negligence." Counsel then said that Mr. Silverstein had a right to cross the street, that people were here before streetcars and automobiles. Then he said, "The way automobiles come down, thundering down the street, it's rare that anybody will give you a break, and the motorman must know those things. He secs it every day. He sees when a person goes to cross the street, he sees what chance any automobilist will have to give him a break. So if you are trapped in a situation, who knows it better than the motorman who is operating on those streets." The objection was, "Your Honor, I am going to object to that as outside the issues in this case."

■ Indisputably, the man was "trapped" in the traffic, and, obviously, the fact was not wholly outside the issues. Poague v. Kurn, 346 Mo. 153, 140 S.W.2d 13. Whether the argument is susceptible to the interpretation that it also concerned or permitted consideration of *antecedent primary negligence* we need not say. The cases upon which the appellant relies are instances in which the trial court granted a new trial because of improper argument, Robbins v. Brown-Strauss Corp., 363 Mo. 1157, 257 S.W.2d 643, or, the argument was not only wholly outside the issues but was obviously misleading and inflammatory as in Amsinger v. Najim, 335 Mo. 528, 73 S.W. 2d 214. As indicated, the argument was not wholly outside the issues and it was neither so misleading nor inflammatory nor otherwise objectionable as to compel the granting of a new trial in this court. Collins v. Cowger, Mo., 283 S.W.2d 554; Hill v. St. Louis Public Service Co., 359 Mo. 220, 228–229, 221 S.W.2d 130, 135.

Accordingly, the judgment is affirmed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

EAGER, P. J., STORCKMAN, J., and BROADDUS, Special Judge, concur.

LEEDY, J., not sitting.